## Summit Silk Company

*v.*

Fidelity Trust Company of Baltimore, a corporation of the State of Maryland, guardian of the estate of Emily E. de Forest, a lunatic, and Emily de Forest.

[Decided July 27th, 1917.]

A contract made in the name of a corporation by its president in the usual course of business, which its directors can authorize and make or ratify, is presumed to be binding on it until it is clearly shown that it was not authorized or ratified, especially where acquiesced in until the other party has become insane.

On pleadings and proofs.

*Messrs. McDermott & Enright,* for the complainant.

*Messrs. Vredenburgh, Wall & Carey,* associated with *Charles L. Kingsley* (of the New York bar), for the defendants.

Lewis, V. C.

This suit is brought to restrain the defendants from prosecuting an action at law, in ejectment, against the Summit Silk Company regarding certain premises at Summit, New Jersey, in which Emily de Forest has the legal title; the complainant claiming to be the equitable owner, alleging that Emily is a mere trustee.

Emily and Harriet de Forest, sisters, were married to two brothers, one of whom was named Othneil de Forest, and the other was named William H. de Forest, Jr. In August, 1892, the Summit Silk Manufacturing Company was organized as a corporation of this state. It was a close corporation, and the objects stated in the certificate of incorporation were the manufacture and sale of silk and silken goods, to buy lands and to

8

erect thereon buildings, machinery, &c. The incorporators were Othneil de Forest, John Nightingale and William H. de Forest, Jr., and shortly after the organization Othneil de Forest, William H. de Forest, Jr., and Harriet de Forest became the directors; Othneil de Forest was elected president and William H. de Forest, Jr., the secretary and treasurer. Mrs. Emily E. de Forest was the principal owner of the stock. The factory was built on a plot of land consisting of about eight acres, the factory taking up about two acres and leaving a little over six acres vacant.

In 1895 the Summit Silk Manufacturing Company wished to have some houses erected on this plot for its employes, but as it did not have the funds with which to erect them, the president applied to the Summit Building and Loan Association for a loan. He found out from that association that a corporation could not become a member of the association, and he was, therefore, unable to borrow any money from that association. Thereupon, in March, 1895, Emily E. de Forest became a shareholder to the extent of thirty-five shares in the aforementioned association. Her dues for March, April and May, 1895, were paid on June 13th of that year and were charged to her account on the books of the silk company.

On July 23d, 1895, the silk company duly made, executed and delivered to her the deed dated July 10th, 1895. The deed recites the payment of the consideration of $2,000. This deed is Emily E. de Forest's muniment of title, and her bond of $14,000 was given to the Summit Building and Loan Association together with the security of this title, and the association then made her a loan of $7,000 with which to erect five double tenement houses on the piece of ground which the silk company had conveyed to her.

On the land conveyed to Emily the five double houses were erected, and the payments to the contractors were made by checks of the Summit Building and Loan Association, drawn at the order of said Emily de Forest; fire insurance on the houses was placed in the name of Emily E. de Forest; the houses were rented to the employes in the factory of the silk company,

and the rents were collected by the superintendent or a clerk in the employ of the silk company.

As the rents were collected they were put in the bank to the credit of the silk company, and its check was drawn to the order of the Summit Building and Loan Association at the rate of $75.25 per month. Taxes, insurance and repairs were also paid out of the rents.

In the course of about twelve years the thirty-five shares of the Summit Building and Loan Association matured, and in the first part of February, 1907, the building and loan association sent its check for $7,000 to Emily E. de Forest and the mortgage was canceled, being discharged of record July 18th, 1908.

From the time of the maturity of the shares in the building and loan association until May, 1910, the rents from these houses were collected by clerks and officers of both the Summit Silk Manufacturing Company and its successor, the Summit Silk Company, the present complainant, and were paid over to Emily E. de Forest. During this period taxes, insurance and repairs on these houses were paid by Emily E. de Forest, either personally or through others acting in her behalf.

In January, 1907, Elvero Godone, P. J. Ferrara and Emily E. de Forest were elected directors, and Mr. Godone was made president, and Mr. Ferrara, secretary and treasurer. The silk company became embarrassed and arrangements were made to organize a new company and give extensions to the new company, which was taking over all the liabilities and assets of the old company on two years' time. The result was the organization of the Summit Silk Company as a corporation to take over the entire property and assets of the old company with proper deeds and other instruments of conveyance thereof, and the new company to assume the payment of all indebtedness. The meeting at which the transfer was organized was held on February 20th, 1908. The proceedings are recorded in the minutes on several pages. Emily E. de Forest was present by proxy; she also signed a waiver of notice of the time, place and objects of the meeting. Following the meeting of February 20th, 1908, and in pursuance thereof, deeds and a bill of sale were executed

to transfer all the property of the Summit Silk Manufacturing Company to the Summit Silk Company. The principal deed is dated February 20th, 1908, and includes the lands in dispute, that is to say, it included the property conveyed to the Summit Silk Manufacturing Company by Harriet de Forest and husband, excepting therefrom only the six lots which were previously conveyed to Harriet de Forest and which are not in dispute. On February 20th, 1908, the Summit Silk Manufacturing Company executed a bill of sale by which it sold and transferred to the Summit Silk Company

"all its property wheresoever situate, including its machinery, tools and fixtures located in its factory in the city of Summit, New Jersey, and elsewhere, including office furnishings, patent rights, patents, good-will, merchandise, accounts, bills, notes, money and all other assets."

These instruments establish that the purpose of the Summit Silk Manufacturing Company was to transfer to the Summit Silk Company all its property of every kind and character.

It becomes important, therefore, to ascertain whether the lands and houses in dispute were, in equity, the property of the Summit Silk Manufacturing Company, which made a deed of all its property to the Summit Silk Company.

On October 14th, 1895, the old company duly made, executed and delivered to Harriet de Forest, its deed for certain of its property adjacent to that conveyed to Emily by the deed of July 23d, 1895, and upon which were erected three double tenement houses similar to those erected by Emily upon her land.

On October 18th, 1910, Emily was judicially adjudged a lunatic by the circuit court of the city of Baltimore, Maryland, and the Fidelity Trust Company of Baltimore was appointed her guardian, while she was then located at Baltimore; and has also been appointed guardian of her property and estate in New Jersey by the chancellor.

On December 12th, 1912, an action was commenced in the New Jersey supreme court by the guardian to eject the new company from the houses and premises at Summit, and on October 20th, 1913, the present bill to restrain the ejectment suit

was filed for the purpose of obtaining the benefit of certain equitable defences. Those defences in brief are as follows:

*First.* That there was no consideration for the deed made by the Summit Silk Manufacturing Company to Emily de Forest under which she claimed a right to the possession of the land.

*Second.* That the deed was executed without the authority of the company.

*Third.* That she had assented to a sale of the same property to the Summit Silk Company by the Summit Silk Manufacturing Company after her deed had been recorded, and was estopped to question the title of the Summit Silk Company.

*Fourth.* That she held the title only in trust for the silk company, which, is alleged, had furnished the money for the purchase of the land and the construction of the buildings thereon.

Mrs. de Forest contends that all these defences are available at law except the one which seeks to establish a trust.

The minutes of the stockholders and directors are very meagre and do not disclose that there was any authority given by the stockholders or directors to convey the property in question to Mrs. Emily de Forest, or, for that matter, to Mrs. Harriet de Forest—Harriet de Forest's situation in regard to the land which has been deeded to her by the old company being precisely the same as Emily's, with the exception that when the old company turned over its property to the new company the land heretofore deeded to Harriet was excepted; no mention being made of the deed to Emily. This is a peculiar fact and may or may not be significant as to whether she was the true owner of the lands in question.

It is undoubtedly true, however, that when a contract is made in the name of the corporation by the president in the usual course of business, which the directors have the power to authorize and to make, or to ratify after it is made, the presumption is that the contract is binding on the corporation until it is shown that the same was not authorized or ratified.

Paul Gerli, who had been the chief creditor of the old company, and who had stepped in as the controlling factor of the new company, knew that these rents were being collected by the clerks or other employes of the new company, and he knew that

they were being transmitted to Mrs. Emily de Forest; in fact, the evidence shows that he directed it to be done, and upon the closing of the account of Mrs. Emily de Forest and of her sister, Mrs. Harriet de Forest, he drew and signed the checks to those two ladies for the proportionate amounts due them, respectively.

About the year 1910, when Mrs. Emily de Forest had become mentally incompetent and was no longer able to take care of herself and her affairs, Paul Gerli suddenly ceased remitting the rents from these houses to Mrs. Emily de Forest. His explanation of this action on the witness stand was, that he had felt sorry for the de Forests in their financial reverses, and that after the death of Mrs. Emily de Forest's husband he had contributed these rents to her support as a matter of charity, but that when his own silk company had difficulty in meeting expenses he felt obliged to cut off his philanthropic contribution. If this were true it would certainly stamp Mr. Gerli as an extraordinarily generous man, considering that Mrs. Emily de Forest was nothing to him. It is very difficult to get at the facts in the case, as both Mr. Othneil de Forest and his brother, William H. de Forest, Jr., are dead, and the lips of Mrs. Emily de Forest are sealed through insanity. We cannot get her story, but I am satisfied that the transfer of the land to Mrs. Emily de Forest by the old company was for an adequate *monetary* consideration.

*Second.* That the deed to her was in due form of law and unassailable in this proceeding, with no sufficient testimony to undermine its at least *prima facie* validity.

*Third.* That the credit of Emily de Forest was pledged to obtain the moneys that were used in the construction of the houses and that her obligation was paid off by the rents from those houses, and that no money of the silk company went into those houses. It is apparent that neither Mrs. Emily de Forest nor Mrs. Harriet de Forest desired the burden of handling the rents, &c., when they had husbands to do it for them. Women, very frequently, do not care to assume these burdens. I think this fully accounts for the facts already mentioned. I am quite satisfied that the whole business was done in a perfectly natural

manner under all the circumstances of the case; and it must be remembered that the burden of establishing the various contentions of the complainant is upon the complainant and must be sustained by the clearest and most convincing proof, more particularly because one of the circumstances attendant upon the claim of the silk company is that it was asserted only after a blight had fallen upon the mind of Mrs. Emily de Forest, and after it had acquiesced in her apparent right for about two years; and also, because of the fact that Mrs. Emily de Forest is unable to give her testimony in this proceeding. If there be any doubt whatever, it must be resolved in favor of the incompetent woman.

The real question before the court is whether Emily is a trustee for the silk company, and as I find that there is no resulting trust, but that Emily is the owner of both the legal and equitable title in the premises in question, that disposes of the case.

I shall advise a decree in accordance with these views.